IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| THOMAS D. ARTHUR, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:16-cv-866-WKW |
| | ) | [WO] |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Thomas D. Arthur is an Alabama death-row inmate who is in the custody of the Alabama Department of Corrections ("ADOC") awaiting his execution.[1]  Arthur filed a complaint under 42 U.S.C. § 1983 challenging the ADOC's policy prohibiting an inmate's attorney who is also a designated witness to his execution from having access to a cellular phone and/or a landline telephone during the execution.  Arthur claims that this policy abridges his right of access to the courts in violation of the First, Eighth, and Fourteenth Amendments to the United States Constitution.  Arthur also claims that Defendants' invocation of Alabama Code § 15-18-83 (1975) to prevent his counsel from acting in a "legal capacity"

---

[1] On April 4, 2017, the Alabama Supreme Court set Arthur's execution date for May 25, 2017.  (Doc. # 31-1.)

during his execution violates these same constitutional rights. (Doc. # 1.) Arthur seeks declaratory and injunctive relief.

This matter is before the court on Defendants' Motion to Dismiss Arthur's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 18.) Defendants' motion is due to be granted.

## II.  DEFENDANTS' MOTION TO DISMISS

Defendants assert that Arthur's complaint should be dismissed at this juncture and without a hearing for three independent reasons: (1) it is clear from the face of the complaint that Arthur's right-of-access claim is time-barred; (2) Arthur fails to state a claim for which relief can be granted; and (3) his complaint is subject to dismissal under the doctrine of laches because Arthur has unreasonably delayed in bringing this claim.

### A.   Statute of Limitations

It is well settled that when the complaint shows on its face that the limitations period has expired, a statute-of-limitations defense may be raised on a motion to dismiss for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *See AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982) (party may seek dismissal based on statute-of-limitations defense pursuant to Rule 12(b)(6)); *Mann v. Adams Realty Co.*, 556 F.2d 288 (5th Cir. 1977).

Arthur claims that the ADOC's policy prohibiting an inmate's counsel who is witnessing his execution from having access to a cellular phone or a landline telephone during the execution violates his right-of-access to the court under the First, Eighth, and Fourteenth Amendments. (Doc. # 1 at 9-10.) He contends that enforcement of this ADOC policy, in combination with the application of Alabama Code § 15-18-83 (1975) to prohibit his counsel from acting as counsel during an execution, conflicts with his constitutional rights to due process, meaningful access to the courts, and freedom from cruel and unusual punishment, and will leave his counsel unable to contact the courts to seek intervention if something arises during an execution that warrants a stay or other relief.

Arthur requests the court to enjoin Defendants from enforcing the ADOC's policy prohibiting a visitor from possessing a cell phone while in the prison so that his counsel may possess one while there to view his execution. Arthur represents that his counsel would possess a cell phone for the sole purpose of communicating with his other counsel and the courts. Alternatively, he requests an order directing Defendants to provide his counsel a cellular phone or a landline telephone in the viewing room set aside for his witnesses, to which his attorney witness may have unfettered access during the execution. Arthur also seeks a declaratory judgment that (1) the ADOC's policy, Alabama Dep't of Corr. Reg. 303, ADOC Form 303-E(B)(2), bars him from meaningful access to the courts, in violation of his First,

Eighth, and Fourteenth Amendment rights, and (2) Alabama Code § 15-18-83 (1975) is unconstitutional to the extent that it precludes a condemned inmate's counsel from acting in a "legal capacity" as the inmate's counsel at his execution.

As seen in *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008), "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. *Wilson v. Garcia*, 471 U. S. 261, 275–76, 105 S. Ct. 1938, 1946-47, . . . (1985)." In Alabama, the governing limitations period for a tort action is two years. *See* Ala. Code § 6–2–38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (*en banc*). Therefore, for Arthur's claim to be timely, it had to be filed within two years from the date the limitations period began to run.

In this circuit in § 1983 actions, "the statute of limitations does not begin to run until the facts that would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (internal quotations omitted). Thus, it is necessary to determine when the statute of limitations began to run for the constitutional claims Arthur asserts.

### 1. *Alabama Dep't of Corr. Reg. 303, ADOC Form 303-E(B)(2)*

ADOC Administrative Regulation Number 303 (AR 303) is a twenty-four page document concerning prison operations. The regulation itself consists of

sixteen pages of text, accompanied by eight additional pages of form documents. (Doc. # 5-1.) One document attached is entitled Orientation Guidelines for Visitors and Inmates; it is identified as Annex A to AR 303 and is located at page 17 of 24. (Doc. # 5-1 at 18.) AR 303 and Annex A to AR 303 both reflect that they became effective on August 1, 2012. (Docs. # 5-1, 5-1 at 18.)

Section A of Annex A to AR 303 sets out the General Rules for Visitation. Section B thereof lists fifteen Prohibited Items. One prohibited item listed, No. 2, is electronic equipment, including cell phones. Specifically, Section B.2. prohibits: "Electronic equipment to include, but not be limited to, cell phones, video games, radios, MP3 players, laptops, etc." (Doc. # 5-1 at 18.)

The court is cognizant of the ADOC's long-standing policy prohibiting visitors from possessing cellular telephones or wireless devices within its correctional facilities. This policy applies to all visitors, even those who also happen to be counsel for a death-row inmate and are at the facility as designated witnesses to an execution. The policy makes no exception for attorneys in this instance; a visitor is a visitor. Annex A to AR 303 on its face indicates that the most recent date the cell phone ban policy has been reaffirmed, modified, or updated is August 1, 2012. Thus, at the latest, the statute of limitations for Arthur's claim challenging the ADOC's cell phone ban policy as unconstitutional began to run on August 1, 2012, the effective date of Annex A to AR 303. Given the two-year statute of limitations

applicable to all § 1983 claims filed in Alabama, *McNair*, 515 F.3d at 1173, the statute of limitations for Arthur's cell phone ban claim expired on August 1, 2014. Arthur's present action challenging the cell phone ban policy was filed on November 2, 2016. (Doc. # 1.) Therefore, it is time-barred on the face of the complaint and due to be dismissed, similar to the virtually identical claim raised by Ronald Bert Smith in *Smith v. Dunn*, 2:16cv269 (M.D. Ala. Nov. 18, 2016), challenging the same cell phone ban policy, which the court addressed in the Midazolam Litigation, *Grayson v. Dunn*, 2:12-cv-316-WKW, 2016 WL 6832630, at *5-6 (M.D. Ala. Nov. 18, 2016), *aff'd*, *Grayson v. Warden*, No. 16-17167, 2016 WL 7118393 (11th Cir. Dec. 7, 2016) (unpublished).

### 2. *Alabama Code § 15-18-83 (1975)*

Alabama Code § 15-18-83 (1975) is an Alabama statute concerning those who are authorized to be present at an execution. The current version of this statute, effective since 1975, states:

Persons who may be present at execution.

(a) The following persons may be present at an execution and none other:

(1) The executioner and any persons necessary to assist in conducting the execution.

(2) The Commissioner of Corrections or his or her representative.

(3) Two physicians, including the prison physician.

6

>   (4) The spiritual advisor of the condemned.
>
>   (5) The chaplain of Holman Prison.
>
>   (6) Such newspaper reporters as may be admitted by the warden.
>
>   (7) Any of the relatives or friends of the condemned person that he or she may request, not exceeding six in number.
>
>   (8) The immediate family of the victim, over the age of 19, not exceeding eight in number and apportioned equally among the victim's immediate family members. If there are fewer than six total immediate family members of the deceased victim, additional immediate family members of a victim, for whose death the inmate is not sentenced to death.
>
>   (b) No convict shall be permitted by the prison authorities to witness the execution.

Alabama Code § 15-18-83 (1975).

This statute establishes by job title, occupation, familial relationship, and prisoner designation, those persons who are permitted to witness an execution. It expressly states that only those persons listed may attend. An inmate's counsel may attend his execution as one of the friends whom the inmate designates to attend; however, the statute makes no separate provision for an inmate's counsel to attend his execution, while acting in a legal capacity as the inmate's counsel. Counsel may attend only as a designated friend.

Arthur was convicted and received a death sentence for the capital murder of Troy Wicker in 1982. *Arthur v. Comm'r, Ala. Dep't. of Corrs.,* No. 16-15549, 2016 WL 6500595, at *1 (11th Cir. Nov. 2, 2016). Alabama Code § 15-18-83, enacted in

1975, was in effect in 1982 at the time Arthur was convicted and sentenced to death. Thus, Arthur has been on notice of this statute since 1982, and at the latest, since 1998, when his state review became final. *Arthur v. Thomas*, 739 F.3d 611, 618 (11th Cir. 2014). Therefore, the statute of limitations for Arthur's claim challenging the constitutionality of this statute began to run no later than 1998. Given the two-year statute of limitations applicable to all § 1983 claims filed in Alabama, *McNair v. Allen*, 515 F.3d at 1173, the statute of limitations for Arthur's constitutional challenge to Alabama Code § 15-18-83 (1975) expired, at the latest, in 2000. Arthur's complaint challenging this statute was filed on November 2, 2016. (Doc. # 1.) Therefore, this claim is time-barred.

Arthur contends that his right-of-access claims challenging the cell phone ban policy and the constitutionality of Alabama Code § 15-18-83 (1975) are timely because he was not injured until November 1, 2016, when the ADOC denied his request for cell phone access, and Defendants invoked the Alabama statute to prevent his counsel from attending the execution as his counsel. Based on his premise that his constitutional injury occurred on November 1, 2016, Arthur contends the two-year statute of limitations has not expired on these claims.

Arthur's argument is unpersuasive for the same reasons the nearly identical claim asserted by Ronald Bert Smith in the Midazolam Litigation, *see Grayson v. Dunn*, 2:12cv316 (Doc. # 205 at 14-16), discussed earlier at page 6, was

unpersuasive. Arthur employs this discrete act as a smokescreen to obscure the fact that his right-of-access claim is untimely in all respects.[2] Because Arthur did not file this claim until November 2, 2016, it is time-barred on the face of the complaint and due to be dismissed, like Ronald Bert Smith's claim in the Midazolam Litigation, *Grayson v. Dunn*, *supra*. *See also Roberts v. Myers*, 2:14-cv-1028-WKW, 2015 WL 1198666, at *2-3 (M.D. Ala. March 16, 2015) (Doc. # 21 therein.)

B.  **Failure to State a Claim for Relief Under Fed. R. Civ. P. 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 663 (alteration in original) (citation omitted).

---

[2] Likewise, Arthur's assertion that the ADOC's cell phone ban policy is discretionary and that the ADOC has relaxed this policy at prior executions in respect to the media (*see* Doc. # 20 at 2) is equally unavailing. Even if that assertion is accurate, Arthur's right-of-access claim is time-barred. Whether the ADOC has exercised its discretion and permitted media representatives to possess cell phones previously is irrelevant and has no impact on Arthur's expired claim.

### 1. Right-of-access claim

Prisoners have a constitutional right to have meaningful access to the courts pursuant to the First and Fourteenth Amendments to the United States Constitution. *See Lewis v. Casey*, 518 U. S. 343, 347 (1996); *Bounds v. Smith*, 430 U. S. 817 (1977) (holding that "inmate access [must be] adequate, effective and meaningful"); *Thaddeus–X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). As stated in *Lewis*, "[i]t is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts . . . ." *Lewis*, 518 U. S. at 349. In *Thaddeus-X*, the Sixth Circuit emphasized:

> . . . The importance of this right to incarcerated individuals is evident and can hardly be overstated:
>
> The right to file for legal redress in the courts is as valuable to a prisoner as to any other citizen. Indeed, for the prisoner it is more valuable. Inasmuch as one convicted of a serious crime and imprisoned usually is divested of the franchise, the right to file a court action stands . . . as his most "fundamental political right, because preservative of all rights."

175 F.3d at 391 (quoting *Hudson v. McMillian*, 503 U. S. 1, 15 (1992) (Blackmun, J., concurring in the judgment)).

In evaluating a claim of denial of meaningful access to the courts, the court must "weigh[ ] the interests of the prison as an institution (in such matters as security and effective operation) with the constitutional rights retained by the inmates." *Thaddeus-X*, 175 F.3d at 390. *See also Turner v. Safley*, 482 U. S. 78, 89–91 (1987).

To prove a claim, a prisoner must demonstrate "actual harm." *See Lewis*, 518 U. S. at 349 ("It is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm"). A prisoner must demonstrate "that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353.

In support of his right-of-access claim, Arthur relies on *Coe v. Bell*, 89 F. Supp. 2d 962 (M.D. Tenn. 2000), a death-penalty case where the condemned inmate, Robert Coe, sought declaratory and injunctive relief to enjoin the warden from prohibiting his counsel from having access to him during the last hour of his life and while witnessing his execution. Granting Coe partial injunctive relief, the district court stated:

> Plaintiff's right to meaningful access to the courts to assert that [Eighth Amendment] right requires that counsel have some access to the prisoner during the last hour before the execution and be permitted to witness his execution and have access to a telephone until execution has been successfully carried out.

*Coe*, 89 F. Supp. 2d at 966.

The defendant warden in *Coe* appealed the district court's order permitting Coe's counsel to witness the execution and have access to a telephone until the execution was completed. Regardless of the appeal, the execution proceeded, and Coe was executed. Subsequently, his counsel moved the Sixth Circuit to dismiss the appeal as moot. The Sixth Circuit granted the motion to dismiss because the appeal was moot as it pertained to the district court's order granting injunctive relief,

11

explaining: "Where an order appealed from is unreviewable because of mootness, the appropriate thing for this court to do is to vacate the order." *Coe v. Bell*, 230 F.3d 1357 (Table), 2000 WL 1477441, *1 (6th Cir. 2000).

Arthur points out that, in vacating the district court's order granting injunctive relief in *Coe*, the Sixth Circuit made no comment as to the merits of the district court's injunction. Therefore, Arthur submits that, even though the order granting injunctive relief in *Coe* was vacated, it retains persuasive value. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) ("We are free to give statements in a vacated opinion persuasive value if we think they deserve it.").

In addition to his reliance on *Coe*, Arthur also supports his right-of-access claim with reports that there were anesthesia problems with the Christopher Brooks and Ronald Bert Smith executions in 2016. Specifically, Arthur states, "according to a witness, Mr. Brooks' left eye opened *after* the midazolam was administered and Mr. Brooks was supposed to have been fully anesthetized." (emphasis in original). (Doc. # 20 at 8.) As to the Smith execution, Arthur states:

> Witnesses to Mr. Smith's execution reported that Mr. Smith "clenched his fist after being given the first drug," and that he "was apparently struggling for breath as he heaved and coughed for about 13 minutes," in a botched execution that "lasted for more than half an hour."

(Doc. # 20 at 8-9.)

12

These arguments are addressed in turn.

### a.     *Coe v. Bell*

Arthur is correct that since the district court's order granting injunctive relief in *Coe* was vacated, not reversed, it still may have persuasive value. Regardless, this court is not bound by the decision of a sister district court and is not inclined to follow suit. Although it granted injunctive relief, the district court in *Coe* had reservations about that decision: "This court is skeptical about a prisoner's realistic ability to assert and get redress for a violation of his right to be free from cruel and unusual punishment during the execution itself." 89 F. Supp. 2d at 966. For the reasons detailed *infra*, this court, too, has similar reservations about the propriety of granting injunctive relief similar to that granted in *Coe*. Those reservations, and the absence of any persuasive authority, compel denial of the injunctive relief requested.

### b.     *Witness reports from the Brooks and Smith executions*

The events Arthur alleges occurred at the Brooks and Smith executions scarcely indicate a denial of access to the courts. Arthur has only suggested the Brooks's eye-opening episode, and the alleged significance of that information was only identified after the fact, when an expert was engaged.[3] The witness reports to which Arthur points are not remotely "actionable." The following hypothetical

---

[3] There is no expert testimony regarding the events alleged to have occurred at the Smith execution.

telephonic colloquy during an execution illustrates the futility and folly of such a call to a judge after counsel witnesses an eye open and calls the judge with this report:

> Counsel: "His eye just opened."
>
> Judge: "What exactly does that mean?"
>
> Counsel: "I don't know."
>
> Judge: "What are you asking me to do?"
>
> Counsel: "Stop the execution."
>
> Judge: "What drugs have they given?"
>
> Counsel: "I don't know."
>
> Judge: "What volume of unknown drugs have they given?"
>
> Counsel: "I don't know."
>
> Judge: "At what rate over time were the unknown drugs in unknown amounts given?"
>
> Counsel: "I don't know."
>
> Judge: "What would be the effect on your client if I ordered the execution stopped?"
>
> Counsel: "I don't know."

Judge: "Can you tell me with any degree of medical certainty that stopping the execution at this point would not harm your client, cause him pain and suffering, or leave him permanently comatose?"

Counsel: "No, honestly I can't."

The same colloquy would ensue if the inmate tried to sit up and speak, groaned and thrashed, called for help, or had any other physical reaction that might occur during an execution. Counsel, with hypothetical degrees in, say, philosophy or political science and law, is an untrained layperson, the medical equivalent of a turnip. Likewise, the judge would be – with his hypothetical history, English literature, and law degrees – a veritable vegetable in all things medical. The reality is that, once the execution drugs begin to flow, only the warden knows what has been administered, in what amounts, and generally over what time period. Even experienced physicians presented with this scenario likely would be unable to opine as to the immediate or lingering effects on the inmate, or prognosis of an inmate in that circumstance. The result of an interference by a court would, in all likelihood, be cruel and unusual, a fumbling error invited by counsel and, in the end, uncivilized. This court cannot imagine a scenario in which any such interference should be undertaken.

Arthur has not shown that the ADOC's policy prohibiting visitors, including an inmate's counsel, from having access to a cell phone and/or a landline telephone

during an execution is a constitutional violation. Arthur has failed to state a claim for which relief can be granted.

### 2. *Implied right-to-counsel claim*

Arthur claims that Defendants' invocation of Alabama Code § 15-18-83 (1975) to prevent his counsel from acting in a "legal capacity" during his execution violates his constitutional rights. While not stated expressly, Arthur implies that he has a Sixth Amendment right to counsel during his execution.

In considering this claim, the court is guided by *Estate of Gary Lockett v. Fallin*, 841 F.3d 1098 (10th Cir. 2016), a case arising from a lethal injection execution where the vein used for the injection site collapsed and was not detected immediately by the execution team.[4] The collapsed vein condition resulted in some of the execution drugs infiltrating Lockett's body tissue surrounding the injection site rather than entering his bloodstream, keeping Lockett from receiving full doses of the drugs. As a result, Lockett's execution took longer than expected, proceeding for forty-three minutes, before its completion. Subsequently, Lockett's estate filed an action under 42 U.S.C. § 1983, raising numerous constitutional claims, including a claim that Lockett's right to counsel during the execution was violated. The district

---

[4] The vein used for the injection site was in Lockett's groin. Out of "concerns for Lockett's dignity and privacy," 841 F.3d at 1110, the execution team covered Lockett's groin area and the injection site with a cloth to prevent Lockett's groin from being exposed to witnesses viewing the execution. The cloth also prevented the execution from noticing the IV infiltration problem more promptly.

16

court dismissed all claims on qualified immunity grounds. Addressing the right-to-counsel claim, the court stated:

> Plaintiff's final claim is that Mr. Lockett had a right to have his counsel present during the entire execution process, so that counsel could observe and confidentially communicate with him during the execution. Apparently, plaintiff claims that Mr. Lockett had a right to communicate with his counsel as he lay on the gurney in the execution chamber, so that he could potentially commence litigation about whatever aspect of the execution process arguably violated his rights. Plaintiff cites no authority which gets remotely close to supporting that remarkable assertion, and the court has considerable doubt whether any constitutional violation of that sort even arguably exists. To the extent plaintiff relies on the Sixth Amendment as a source of such a right, it is well-established that "[t]here is no constitutional right to counsel beyond the direct appeal of a criminal conviction." *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008). Additionally, as another judge in this district recently noted, "[n]o court has found a constitutional right for the prisoner to have counsel present to supervise the IV insertion process." Transcript of Ruling at 15–16 [Doc. # 179], *Warner v. Gross*, No. 14–CV–665–F, 2014 WL 7671680 (W.D. Okla. Dec. 22, 2014).

*Estate of Clayton Lockett v. Fallin*, No. CIV-14-1119-HE, 2015 WL 3874883, at *9 (W.D. Okla. June 23, 2015).

On appeal, the Tenth Circuit affirmed. *Lockett v. Fallin*, 841 F.3d 1098 (10th Cir. 2016). Addressing the Lockett Estate's claim that Lockett had a right to counsel during his execution, the Tenth Circuit stated:

> Lockett's Estate attempts to assert a constitutional right to counsel throughout an execution. It asks this court to recognize a constitutional right to counsel "when an execution procedure is producing unexpected and painful results." Appellant's Opening Br. at 33 n.11. Lockett's Estate points to no law that would support

17

a right to counsel throughout an execution, and we struggle to envision what such a right would look like in practice. Thus, Appellees have violated no clearly established law.

*Lockett*, 841 F.3d at 1117.

In support of his implied right-to-counsel claim during his execution, Arthur relies solely on *Coe v. Bell*, *supra*. For the reasons previously stated, the court is not bound by and declines to follow *Coe*. Instead, the Tenth Circuit's analysis of a similar claim in *Lockett*, *supra*, is instructive and persuasive. The Tenth Circuit's "struggle to envision what such a right would look like in practice," *Lockett*, 841 F.3d at 1117, was prescient, similar to the foregoing hypothetical colloquy that could occur between the court and counsel during an execution if an inmate had a right to counsel during the execution itself and if counsel were able to place a telephone call to the court while the execution is in progress.

In the final analysis, Arthur has failed to state a plausible claim for which relief can be granted on his implied right-to-counsel claim during his execution. His allegations are purely speculative. To state a valid claim, Arthur would have to establish an actual injury. *See Lewis*, 518 U. S. at 349, 351–52. Arthur's request for his counselto take a cellular device into a prison while an execution is taking place is based on speculation that something might go wrong during the procedure. This theoretical basis for relief falls outside of the injury requirement stated in *Lewis*. *Cf. Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013) ("One is not entitled to

access to the courts merely to argue that there might be some remote possibility of some constitutional violation."). For that reason alone, Arthur's claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). Further, even if this claim were meritorious, for the reasons stated above, it is time-barred.

C.     **Doctrine of Laches**

Arthur's complaint is due to be dismissed because all claims raised therein are time-barred and because under Federal Rule of Civil Procedure 12(b)(6) it fails to state a claim for which relief can be granted. The court need not consider Defendants' remaining argument for dismissal under the doctrine of laches.

### III. CONCLUSION

For the reasons stated, it is ORDERED that Defendants' Motion to Dismiss Arthur's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. # 18) is GRANTED. A separate final judgment will be entered.

DONE this 12th day of April, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE